In the Matter of BENJAMIN ALTMAN, an Attorney, Respondent. ASSOCIATION OF THE BAR OF THE CITY OF NEW YORK, Petitioner.

First Department, April 9, 1943.

*S. C. Lewis* of counsel (*Einar Chrystie,* attorney), for petitioner.

No appearance for respondent.

*Per Curiam.* The respondent is charged with professional misconduct in that, while acting as attorney for Herman Shore in the purchase of a rooming-house business, including a lease to the premises, he falsely represented that he had made a search for violations against the property. It is further charged that his misconduct was aggravated by the fact that respondent had a motive to induce his client to purchase the business and lease in that he was also acting as broker for the seller and, without his client's knowledge, was to receive a fee from the seller of the business.

The record discloses that Shore was interested in the purchase of a rooming-house at Broadway and Seventieth street, New York City. He was introduced to the respondent because the latter was not only an attorney but was said to be familiar with the rooming-house business by virtue of the fact that he was part owner of such a business in New York City. After respondent had been informed about the premises at Broadway and Seventieth street, he told Shore that the proposition was " no good " and that he had a " better " one. He then took Shore to 9 West One Hundred Seventh street, New York City, and introduced the owner and operator of a rooming-house business at that address. The respondent told Shore to " grab " the One Hundred Seventh street proposition and induced him to pay a deposit of $100 on the purchase of the business and a lease of the building. He also accepted a retainer to act as attorney for Shore and was paid twenty-five dollars at that time. He did not disclose, however, that he was also acting as broker for the then owner and endeavoring to obtain a purchaser. The respondent agreed to search for violations against the premises, particularly for any that would prevent the operation of the building as a " legal " rooming-house. He later reported that there were no violations and Mr. Shore purchased the property for $3,500.

At the closing of the sale, Mr. Shore learned for the first time that the respondent had been acting as broker for the seller, for which he received a fee of five per cent or $175. Several days later, Shore learned that a number of violations,

including a requirement that a sprinkler system be installed, had been filed against the premises. Unable to meet the cost of removing these violations, estimated at several thousand dollars, Shore was compelled to surrender his lease and lost the $3,500 he had paid for it.

The respondent contended that at the time he was retained to search for violations, he was " emotionally upset " because of the illness of his brother. He testified that he was a school teacher in the service of the public school system in New York City, and he claimed that his " error " was " due to my lack of experience in these matters " as he did not intend to " deceive " his client in any way. It was brought out, however, that shortly prior to the time he represented Shore, the respondent and a Mrs. Goldberg purchased a lease to a rooming-house in the same neighborhood. In the contract of purchase, the respondent provided that the landlord was to remove all violations. There is also testimony in the record that the respondent was familiar with the need for installing a sprinkler system and that one was installed in his own rooming-house shortly before he first met Shore.

The referee has reported that the charges have been fully sustained. Based, in part, on the contradictory statements made by the respondent in an affidavit filed with the petitioner's Grievance Committee, in his answer to the petition herein and in testimony before the referee, the latter in his report, has stated: " * * * the respondent's statements were so inconsistent and irreconcilable that his testimony is unworthy of belief."

This respondent endeavored to teach school, operate a rooming-house and practice law at the same time. Although his failure to adhere to the standards and ethics required of members of the legal profession may be due, in part, to the variety of his activities, it is more likely, as the referee found, that the true cause of his wrongdoing was the fact that he " was carried away by his desire to earn a * * * commission of $175." The record justifies the statement of the referee that the respondent is " not fit to be a lawyer."

The respondent should be disbarred.

MARTIN, P. J., TOWNLEY, GLENNON, COHN and CALLAHAN, JJ., concur.

Respondent disbarred.